FILED

MAR 17 2006

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

In re

JOE GUILLEN TORRES

        Debtor.

_____/

Case No. 05-16471-A-13F
DC Nos. HDN-1; GB-2

FINDINGS OF FACT AND
CONCLUSIONS OF LAW
REGARDING DEBTOR'S MOTION
TO CONFIRM SECOND AMENDED
PLAN; AND MOTION OF CREDITOR,
JANE DOE, TO DISMISS CASE

    A hearing was held January 19, 2006, on the motion of the debtor to confirm a Second Amended Plan (the "Second Amended Plan") and on the motion of creditor Jane Doe to dismiss the chapter 13 case.  Following the hearing, the court took both matters under submission.  This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined in 28 U.S.C. §157(b)(2)(A), (L) and (O).

<u>Procedural History and Background Facts.</u>

    As a preliminary matter, the debtor filed the Declaration of Joe Torres and a Memorandum of Points and Authorities in support of confirmation of the Second Amended Plan on January 18, 2006. He filed a proof of service showing that those documents were served by mail on January 18, 2006, on counsel for Jane Doe and were faxed to counsel for Jane Doe on the same date.  At the hearing, when made aware of these late filed documents, counsel



for Jane Doe asked that the documents be stricken. The court granted that request, holding that neither the Declaration nor the Memorandum of Points and Authorities filed January 18, 2006, would be considered in ruling on the motion to dismiss or the motion to confirm the Second Amended Plan. However, the court, at the request of the debtor, agreed to take judicial notice of the docket in the case, including the claims register, reflecting the fact that the bar date for filing proofs of claim was December 19, 2005, and that as of the date of the hearing on January 19, 2006, no proof of claim had been filed by Jane Doe.

This chapter 13 case was filed August 18, 2005. The debtor filed a First Amended Chapter 13 Plan on September 21, 2005, and a Second Amended Plan (the one under consideration here) on November 3, 2005. The Second Amended Plan contemplates the debtor paying the trustee $540 per month for 36 months. Unsecured creditors are to receive a distribution of not less than fourteen percent.

Jane Doe moved to dismiss in October 2005. The hearing on that motion was continued from time to time, pursuant to stipulation among the parties, to January 19, 2006. Jane Doe also objected to the confirmation of the First Amended Plan and the Second Amended Plan. A hearing on her objection to confirmation of the Second Amended Plan was also continued from time to time by agreement to be heard on January 19, 2006.

The Trustee had also moved to dismiss the case, but the trustee withdrew his motion to dismiss at the hearing on January 19th, having obtained the debtor's agreement to certain changes in the Second Amended Plan.

As stated above, the last day for non-governmental creditors to file proofs of claim in this case was December 19, 2005, and Jane Doe has not filed a formal proof of claim.

Additionally, the debtor in this case was the debtor in a prior chapter 7 case, Case No. 05-14727, filed June 10, 2005. In that case, the debtor failed to file a Summary and Schedules A through J, a Statement of Financial Affairs, or the Attorney's Disclosure of Compensation. As a result, the court ordered the case dismissed. The order dismissing the case was entered August 4, 2005. The dismissal order does not bar the debtor from a further bankruptcy filing. Therefore, the chapter 7 case filed in June 2005 and dismissed in August 2005 created no statutory impediment to the debtor filing this case. Bankruptcy Code § 109(g)(1) was not implicated by the prior filing and dismissal.

The objection to confirmation and the motion to dismiss raise several issues. The primary thrust of Jane Doe's argument is that the debtor here filed this chapter 13 case in bad faith. Thus, she argues, the Second Amended Plan should not be confirmed, and the case should be dismissed. She also argues that the debtor is not a proper debtor due to the prior filing and Bankruptcy Code § 109(g)(1). For the reasons set forth above, this latter argument is not persuasive. Therefore, the balance of these findings will focus on the "good faith" issue.

The debtor has asked the court to take judicial notice of the fact that no proof of claim has been filed by Jane Doe. According to the debtor, because Jane Doe has not filed a formal proof of claim, she has no standing to move to dismiss or to object to plan confirmation.

Does Jane Doe Have Standing?

Bankruptcy Code § 1307(c) allows a "party in interest" to move to dismiss or convert a chapter 13 case. Section 1324 provides that "a party in interest" may object to plan confirmation.

A number of courts have discussed whether a creditor who has not filed a proof of claim by the bar date in a chapter 13 case is a party in interest within the meaning of § 1307 or § 1324. The decision perhaps with the most onerous effect on such creditors is In re Stewart, 46 B.R. 73 (Bankr. D. Or. 1985). In that case, the court held that to be a "party in interest" a creditor must be the holder of an allowed unsecured claim. In order to have an allowed unsecured claim, the creditor must have filed a proof of claim. The Stewart court considered whether any other writings filed by the creditor in that case could constitute an informal proof of claim and concluded that the objections to confirmation filed by the creditor did not amount to an informal proof of claim. Thus, the creditor in that case was not a party in interest and had no standing to object to plan confirmation.

Since Stewart was decided, it has been criticized by several bankruptcy courts. An Iowa bankruptcy court held that the Bankruptcy Code does not require the allowance of a claim before the claimant may object to a plan.

> "In providing who might object to plans, Congress used the broad term 'party in interest.' It did not restrict the filing of objections to creditors who hold allowed claims. [citation omitted] Nor does the status of creditor appear to hinge on the entity having filed a proof of claim."

In re Turpen, 218 B.R. 908, 911 (Bankr. N.D. Iowa). The Turpen

case arose prior to the claims bar date, and the court declined to decide whether creditors who had filed untimely claims would be parties in interest.

In <u>In re Ungar</u>, the court held that an objection to confirmation could be considered an informal proof of claim. 70 B.R. 519 (Bankr. E.D. Penn. 1987). The court allowed an objection to confirmation to constitute an informal proof of claim. The court stated:

> "For a variety of reasons, I believe that the failure of the creditor here to state an amount due in its pleading is not a fatal defect to treating that pleading as an informal proof of claim. First, courts have permitted creditors to amend proofs of claim subsequent to the bar date in order to increase the amount sought by the creditors from the estate. [citations omitted] If the failure of a writing to mention the amount claimed bars it from being considered as a proof, amendments to increase the amount, made after the limitations period, would not be permitted." <u>Id.</u>, at 522.

The court went on to state that an informal proof of claim should show that a demand was made against the estate and show the creditor's intention to hold the estate liable. No statement of the amount owing was necessary. <u>Id.</u>

The bankruptcy court in <u>In re Joiner</u> generally agreed with the above proposition. 93 B.R. 130 (Bankr. N.D. Ohio 1988). The <u>Joiner</u> court declined to require that an informal claim must set forth the amount of the claim. The <u>Joiner</u> court observed that equitable considerations were very important to courts considering whether a pleading should be considered an informal proof of claim. <u>Id.</u> at 133. The court observed that "an inflexible requirement that an informal proof of claim state the amount of the claim appears inappropriate. Claims are defined so broadly in the Bankruptcy Code that there may be circumstances

5

where it would be either impossible or purely speculative to set forth the precise amount of the claim prior to the bar date." Id. at 134.

A Minnesota bankruptcy court considered the issue in In re Larson. 245 B.R. 609 (Bankr. D. Minn. 2000). In that case, the court stated that to qualify as an informal proof of claim, a document must state the nature and the amount of the claim as well as the claimant's intent to hold the estate liable. The objection to confirmation in the Larson case met those criteria. Id. at 614, ftn. 1.

The Northern District of California Bankruptcy Court considered the issue in In re Rolyn, 266 B.R. 453 (Bankr. N.D. Cal. 2001). In that case, the objection to confirmation did not contain any language about the nature or amount of the creditor's claim. Therefore, the court held that the document was not an informal proof of claim.

The Eighth Circuit Bankruptcy Appellate Panel has also addressed this question. In re Michels, 286 B.R. 684 (8th Cir. BAP 2002). The Eighth Circuit BAP observed that an objection to plan confirmation might serve as an informal proof of claim conferring standing to object to confirmation. The Bankruptcy Appellate Panel observed that to qualify as an informal proof of claim, "the document must state the nature and amount of the claim as well as indicate the claimant's intent to hold the debtor liable and pursue the claim." Id. at 691.

The Ninth Circuit Court of Appeals has also considered the informal proof of claim question, although not in the context of standing to object to confirmation of a chapter 13 plan. The

court has stated:

> "For these documents to constitute an informal proof of claim, they must state an explicit demand showing the nature and amount of the claim against the estate, and evidence and intent to hold the debtor liable."

In re Sambo's Restaurants, Inc., 654 F.2d 811, 815 (1985). The Ninth Circuit observed that it had a long-established liberal policy toward amendments of proofs of claim:

> "Although this policy cannot override the rules themselves, within the rules we are liberal in what kind of documentation we will treat as a sufficient informal proof of claim." Id. at 816.

The Ninth Circuit expressed the same view in Pizza of Hawaii, Inc., 761 F.2d 1374 (9th Cir. 1985).

Therefore, the question for this court is whether documents filed by Jane Doe prior to December 19, 2005, can be construed as constituting an informal proof of claim.

In her objections to confirmation filed October 18, 2005, Jane Doe stated that she had commenced a civil action in state court "against Debtor and titled Jane Doe v. Joseph G. Torres . . . for childhood sexual abuse, sexual battery, and intentional and negligent infliction of emotional distress." She observed that ten days before trial was to begin, the debtor filed his chapter 7 case, which was dismissed.

On October 31, 2005, Jane Doe filed a Memorandum of Points and Authorities in support of her motion to dismiss. In that document she stated:

> "Doe is the former stepdaughter of Debtor. On December 15, 2003, Doe commenced an action in Fresno County Superior Court against Debtor entitled Jane Doe v. Joseph G. Torres . . . for childhood sexual abuse, sexual battery, and intentional and negligent infliction of emotional distress,

7

based on the fact that Debtor sexually molested Doe." The document goes on to describe that the debtor filed his chapter 7 case just ten days before trial was set to begin. The declaration of Monique Alonso filed October 31, 2005, reiterates these assertions.

Do these statements rise to the level of an informal proof of claim? In the court's view, they do. First, they do show the nature of the claim against the debtor and an intent to hold the debtor liable. It is true that the amount of claim is not stated, but because the debtor filed his first bankruptcy case just before trial, and considering the nature of the claim, the court does not find that a defect here. The amount was subject to proof of damages in state court, and debtor's actions prevented a determination by the trial court of liability or damages. This is not like a breach of contract claim in which an amount certain can be stated.

Additionally, the motion to dismiss was originally filed well before the claims bar date and then continued from time to time. The documents filed by Jane Doe in the motion to dismiss indicate that she is a party aggrieved by the filing of the bankruptcy case. This is another reason for the court to hold that she has standing to move to dismiss.

<u>Were the Case and/or the Plan Filed in Good Faith?</u>

The court will now consider the parties' arguments with respect to dismissal and confirmation of the plan.

As Jane Doe relies on the same grounds in arguing that the court should dismiss the case and should deny confirmation, the court will consider both matters together. In essence, Jane Doe

asserts that the bankruptcy case and the plan were filed in bad faith.

Bankruptcy Code § 1325(a)(3) requires a chapter 13 plan to be proposed in good faith. Although good faith is not among the specifically enumerated reasons that a court may dismiss or convert a chapter 13 case, it is generally held that it is appropriate to dismiss a chapter 13 case if it is not filed in good faith.

<u>Grounds for Dismissal for Bad Faith.</u>

In <u>In re Leavitt</u>, the Ninth Circuit Court of Appeals described grounds to dismiss a chapter 13 case for bad faith. 171 F.3d 1219, 1224 (9th Cir. 1999).[1] According to the Ninth Circuit in <u>Leavitt</u>, the court should consider:

- whether the debtor misrepresented facts in his petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed his chapter 13 petition or plan in an inequitable manner;
- the debtor's history of filings and dismissals;
- whether the debtor intended only to defeat state court litigation;
- whether egregious behavior is present.

<u>Good Faith as a Requirement for Confirmation of a Chapter 13 Plan.</u>

The debtor has the burden to establish good faith. This

---

[1] In <u>Leavitt</u>, the bankruptcy court had dismissed the chapter 13 petition with prejudice under § 349(a). Here, the court is not considering dismissal with prejudice, but simply whether the case should be dismissed.

9

burden has been characterized as especially heavy when a "superdischarge" is sought. In re Warren, 89 B.R. 87, 93 (9th Cir. BAP 1988). Generally, in evaluating whether a plan is proposed in good faith, the court looks at the totality of the circumstances. Id. at 92. A number of specific factors are relevant guidelines in determining whether a chapter 13 plan is proposed in good faith. These factors include:

- The amount of the proposed payments and the amounts of the debtor's surplus;
- The debtor's employment history, ability to earn, and likelihood of future increases in income;
- The probable or expected duration of the plan;
- The accuracy of the plan's statements of the debts, expenses, and percentage of repayment of unsecured debt, and whether any inaccuracies are an attempt to mislead the court;
- The extent of preferential treatment between classes of creditors;
- The extent to which secured claims are modified;
- The type of debt sought to be discharged and whether any such debt is nondischargeable in chapter 7;
- The existence of special circumstances such as inordinate medical expenses;
- The frequency with which the debtor has sought relief under the Bankruptcy Code;
- The motivation and sincerity of the debtor in seeking chapter 13 relief; and
- The burden which the plan's administration would place on

the trustee. Id. at 92-93.

Some of those factors are relevant here, while others are not.

In In re Eisen, the Ninth Circuit stated that in determining whether a petition has been filed in bad faith, courts are guided by the standards used to evaluate whether a plan has been proposed in bad faith. Id. at 470. The court must review the totality of the circumstances. Id.

In the Eisen case, the Ninth Circuit concluded that there was no doubt that the debtor had filed his petition in bad faith. He had timed the filing to frustrate a state court action and had submitted contradictory and misleading descriptions of his assets. Id.

Misrepresentation of Facts.

Jane Doe has asserted that the debtor has misrepresented facts in his petition and plan. The statements made in the debtor's schedules of assets and liabilities in the bankruptcy case conflict with statements made by the debtor in deposition testimony in the state court litigation, and with the marital settlement agreement between the debtor and his wife.

These discrepancies are not entirely explained by the passage of time between the deposition and the filing of the case. As one bankruptcy court put it, "Viewed individually, Debtor's omissions may seem insignificant. Collectively they give the Court cause for concern . . . On the scales described in the case law, this is a factor which weighs against finding Debtor has proposed his plan in good faith." In re James, 260

b.R. 498, 506 (Bankr. D. Id. 2001).

For instance, Torres has testified that he entered into a marital property settlement agreement with his wife on January 10, 2005, pursuant to which she was awarded the real property at 5481 West Dayton Avenue, Fresno, California, and a 1955 Ford Thunderbird and a 1991 Nissan 300Z. Yet, in a deposition on April 8, 2005, Torres testified that he lived at 5481 West Dayton, Fresno, California.

At his deposition in April 2005, Torres testified that he had not thought of retirement "real seriously" yet. He stated that there was no retirement age at Xerox Corporation, his employer. In the April deposition, he testified that he drives a 1991 Nissan and that he still has the 1955 Thunderbird. These are the cars that, according to the marital property settlement agreement, were transferred to Mrs. Torres in January 2005. Mr. Torres testified that on April 29, 2005, he signed a declaration of unrepresented party testifying that on January 1, 2005, he entered into the marital property settlement agreement.

In the bankruptcy petition Torres stated that he owned no vehicles but had transferred a Ford Thunderbird and a Nissan automobile to his former wife in February 2005. In the April 2005 deposition, he testified that he owned the vehicles. Yet in the Statement of Financial Affairs he testified that they were transferred to Carol Torres in February 2005. Schedule J shows $85 per month in car insurance expenses.

At the deposition in April, Torres testified that he lived in the house on Dayton Avenue, had lived there nine years, and owned it jointly with his wife. By the time he filed his

chapter 13 case, Torres asserted that his only assets were his interest in his pension and his interest in a note receivable from his wife, other than household goods and furnishings and clothes. Although the judgment of legal separation was not entered until August 2, 2005, Torres asserts that his debts are not community debts but rather his own debts. Other than the unliquidated, contingent and disputed obligation to Jane Doe, his scheduled debts consist of about $42,000 in consumer credit card debt. Only two of the credit card creditors filed timely proof of claim in amounts of $4,248.11 and $6,524.65 respectively.

According to Torres, the discrepancies between the state court testimony and the schedules are explainable. He says that he was retired from Xerox as of June 28, 2005. He asserts that he does not own real estate because of a trust, although the self settled trust did not preclude him from dealing with the property in a marital settlement agreement. He also asserts that as of January 10, 2005, pursuant to a property settlement agreement, his interest in real estate went to his ex-spouse. This does not explain his testimony at the deposition that he did own real estate. He acknowledged that he does own a 1998 Ford, which he says is fully exempt. However, he did not list it on his schedules.[2]

Despite transferring property to a trust, Torres did enter into a marital property settlement agreement, according to him, which awarded his wife the real property and the cars. According to Torres, the judgment of legal separation was filed August 2,

---

[2] November 14, 2005 declaration of Joe Torres.

2005, incorporating the settlement agreement awarding Mrs. Torres the real property and the cars.

As Judge Pappas has observed in a similar context, "this state of the record is problematic." In re James, 260 B.R. 498, 508 (Bankr. Id. 2001).

The Debtor's History of Filings and Dismissals.

Here, it is undisputed that Torres filed a chapter 7 case in June 2005, failed to file documents, and the case was dismissed.

Did the Debtor Only Intend to Defeat State Court Litigation?

The chapter 7 case was filed ten days before trial was set to begin. Shortly after the chapter 7 case was dismissed, this case was filed.

Is egregious behavior present?

This is the second case filed by Joe Torres, the first chapter 7 case having been dismissed for failure to file documents. According to Torres, his attorney mistakenly filed a chapter 7 case, and therefore he let it be dismissed so that the correct chapter 13 case could be filed. The court can consider the impact of both cases. The chapter 7 case was filed ten days before trial. There are discrepancies among the marital settlement agreement, the deposition testimony in the state court action, and the schedules and statement of affairs in the chapter 13 case.

The Terms of the Second Amended Plan and Other Factors.

The Second Amended Plan contemplates continuing for 36 months with the debtor paying $540 per month to the trustee. There are no creditors in Class 1 (long term delinquent secured claims); Class 2 (secured claims modified by the plan or that do

not extend beyond its length); Class 3 (secured claims satisfied by the surrender of collateral); Class 4 (secured claims paid directly by the debtor); Class 5 (priority unsecured claims); Class 6 (special unsecured claims). There are no executory contracts or unexpired leases dealt with by the plan. The only claims dealt with by the plan are general unsecured claims which the plan states will receive not less than a 14% dividend.[3]

The debtor claims that he is retired.

As there are no secured claims, they are not modified.

If Jane Doe were to prevail in her state court action, her claim would likely be nondischargeable in a chapter 7 case under Bankruptcy Code § 523(a)(6).

As relevant, the issues really are any misrepresentations in the plan or in the schedules of assets and liabilities; the prior chapter 7 filing; the fact that any debt owing to Jane Doe is likely nondischargeable in a chapter 7 case; and the debtor's motivation and sincerity in seeking chapter 13 relief.

Conclusion.

The relevant factors described above cause the court to find and conclude that the case was not filed in good faith and the plan was not proposed in good faith. The chapter 7 case was filed immediately before the trial in Jane Doe's lawsuit was set to commence. Although it was dismissed, the chapter 13 case was

---

[3]The plan as drafted states that distribution to unsecured creditors shall be no more than $32,000, which is estimated at 14% based on esatimated claims. The trustee required the debtor to eliminate this sentence to obtain the trustee's agreement to confirmation. Therefore, the plan simply requires 14% to unsecured creditors.

filed immediately thereafter. The court finds that the debtor filed the cases to defeat the state court litigation.

Based on the inconsistencies among the deposition testimony, the marital settlement agreement, the debtor's declaration in connection with these motions, and the bankruptcy schedules, the court finds that the debtor has misrepresented the facts. While each misrepresentation in itself may be minor, together they present a pattern of misrepresen-tation.

The type of debt that Jane Doe is asserting is a debt that would be nondischargeable in a chapter 7 case. Thus, the debtor's burden to establish good faith is heavy. In re Warren, supra, at 93.[4] The court further finds that the case was filed to prevent the state court trial from going forward.

For all the above reasons, the court finds and concludes that the case was filed and the plan proposed in bad faith. Therefore, the court will issue a separate order denying confirmation of the plan and dismissing the chapter 13 case.

DATED: March 17, 2006.

_____
WHITNEY RIMEL, Judge
United States Bankruptcy Court

---

[4] One bankruptcy court has criticized the statement in Warren that the debtor's burden when a chapter 13 plan would result in a superdischarge is especially high. In re Selden, 116 B.R. 232 (Bankr. D. Or. 1990). Nonetheless, the proposition does not appear to have been rejected by an appellate court in the Ninth Circuit.

PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA        )
                           )  ss.
COUNTY OF FRESNO           )

I am a citizen of the United States and a resident of the county aforesaid; I am over the age of eighteen years and not a party to the within above-entitled action; my business address is 2656 U.S. Courthouse, 1130 O Street, Fresno, California, 93721. On March 17, 2006, I served the within document on the interested parties in said action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at Fresno, California, addressed as follows:

Henry D. Nunez, Esq.
4478 W. Spaatz Avenue
Fresno, California 93722

Monique Alonso, Esq.
GROSS & BELSKY
180 Montgomery Street, Suite 2200
San Francisco, California 94104

M. Nelson Enmark, Esq.
3447 W. Shaw Avenue
Fresno, California 93711

I certify (or declare), under penalty of perjury, that the foregoing is true and correct. Executed on March 17, 2006, at Fresno, California.

*Kathy Torres*

Kathy Torres, PLS